**LEX TECNICA, LTD.**
Samuel Castor, Esq.
Nevada Bar No. 11532
Scott Whitworth, Esq.
Nevada Bar No. 15671
10161 Park Run Drive
Suite 150
Las Vegas, Nevada 89145
(725) 239-8413
sam@lextecnica.com
scott@lextecnica.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AFTER SERVICES, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> FOUNDATION PARTNERS GROUP, LLC, a Florida limited liability company, and DOES I-X, inclusive, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, DAMAGES, AND DECLARATORY RELIEF** |

Plaintiff, AFTER SERVICES, INC., ("<u>AFTER</u>" or "<u>Plaintiff</u>"), by and through its counsel of record, Lex Tecnica, Ltd., hereby alleges and brings an action for trademark infringement, trademark dilution, cybersquatting, and unfair competition under federal statutes, with claims for common law trademark infringement, deceptive trade practices, and intentional interference with prospective economic advantage. Plaintiff seeks damages, attorneys' fees, costs, and a request for preliminary and permanent injunctive relief.

### <u>COMPLAINT FOR DAMAGES FROM TRADEMARK INFRINGEMENT</u>

### <u>AND INJUNCTIVE RELIEF</u>

1. Violation of Lanham Act 15 U.S.C. §§ 1051 et seq.;

2. Trademark Infringement under 15 U.S.C. § 1114;

3. Trademark Dilution under 15 U.S.C. § 1125(c);

4.  Common Law Trademark Infringement;

5.  Intentional Interference with Prospective Economic Advantage;

6.  Unfair Competition under 15 U.S.C. § 1125(a);

7.  Deceptive Trade Practices under N.R.S. 598.0903, et seq.;

8.  Cybersquatting under 15 U.S.C. § 1125(d);

9.  Mark Cancellation Pursuant to 15 U.S.C. § 1064, if/when applicable; and,

10. Declaratory Relief.

## PARTIES

1.      Plaintiff is a corporation organized and existing under the law of the State of Delaware since November 2020.

2.      Upon information and belief, Defendant, Foundation Partners Group, LLC (hereinafter referred to as "FPG" or "Defendant") is a Florida limited-liability company, doing business in Nevada since August 6, 2021. A true and correct copy of FPG's webpage is attached hereto as **Exhibit 1**.[1]

3.      The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of Defendants named herein as DOES I through X, inclusive, are unknown to Plaintiff at this time, and therefore sue Defendants by such fictitious names.  Plaintiff will advise the Court and seek leave to amend this Complaint when the names and capacities of each such Defendant have been ascertained.  Plaintiff alleges that each said Defendant herein designated as a DOE is responsible in some manner for the acts and omissions averred in this Complaint.

## JURISDICTION

4.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00.

///

---

[1] Available at: https://foundpartnersg.wpengine.com/fpgnews/kraft-sussman-funeral-cremation-services-joins-foundation-partners-group.

5.      Furthermore, this Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. §§ 1116, 1119, 1120, and 1121, and 28 U.S.C. §§ 1331 and 1338, as AFTER's claims for relief arise under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051, *et. seq.*

6.      The Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to supplemental jurisdiction under 28 U.S.C. §§ 1367 and 1338(a), because the state law claims are integrally related to Plaintiff's federal claims and are part of the same case or controversy and arise from a common nucleus of operative facts.

7.      This Court has personal jurisdiction over Defendant based upon the following facts: (a) Defendant operates several physical locations in Nevada, under the brand name AFTERall and promotes them via AFTERall.com[2]; (b) Defendant operates a website on the internet under at least the domain www.AFTERall.com that is accessible to residents of the State of Nevada; (c) through the Nevada locations and online platforms Defendant provides its services under the mark AFTERall to consumers located in State of Nevada; (d) upon information and belief Defendant has attended and promoted its services during events in Nevada; and (e) Defendant committed unlawful or tortious acts that it knew or should have known would cause injury to Plaintiff in the State of Nevada.

8.      Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. § 1391(b) and (c). Venue lies in the unofficial Southern Division of this Court.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

9.      **2020:** Plaintiff offers online cremation services, funeral services, for residents of Arizona, Colorado, Oregon, Utah, Washington and California. Plaintiff does not currently offer cremation services in Nevada. Plaintiff commenced its operations in late 2020, and has continuously used the AFTER trademark and brand related to its business services, in connection with advertising and promoting the cremation and funeral services including under the domain AFTER.COM in the United States.

---

[2]  *See* https://www.afterall.com/locations/nevada/ promoting three locations at: (i) 3975 South Durango Drive, Las Vegas, NV 89147, (ii) 6362 McLeod Drive, Las Vegas, NV 89120, and (iii) 3975 South Durango Dr, Las Vegas, NV 89147, all under the AfterAll brand and name.

9.1  The AFTER brand is known and respected in the after-life care industry and has been mentioned in several news articles including Defendant FPG's own blog, The New York Times[3], Phoenix Business Journal, and Utah VC. A true and correct copy of FPG's Blogpost attached hereto as **Exhibit 2[4]**; a true and correct copy of an excerpt from the Phoenix Business Journal article attached hereto as **Exhibit 3[5]**; a true and correct copy of the VC Utah article, attached hereto as **Exhibit 4[6].**

9.2  Plaintiff has expended significant resources to advertise and promote the AFTER marks on its website, via social media and other digital and printed materials on its website www.after.com and its social media pages @Afterdotcom on X and Facebook, etc.

9.3  Based on its federal trademark registration and continued use, Plaintiff owns the exclusive right to use AFTER in connection with cremation and funeral services.

10.  **February 3, 2021**, Solace (later acquired by Defendant) announces it plans to use "After All" (not AfterAll) to describe their blog. This is the first use of the phrase "After All", by Solace. A true and correct copy of a screenshot of Solace's blog is attached hereto as **Exhibit 5**.

11.  **June 25, 2021**, Foundations Partners Group, LLC (FPG) first interacts via emails with AFTER's executive team.  The parties began doing business together thereafter.

12.  **October 16, 2021**, Plaintiff AFTER applied for the "After" trademark (Reg. Number 7089530) for cremation services with a first use date of at least December 15, 2020, but  the After.com website went live before December 15, 2020.

12.1  Plaintiff now owns the federal trademark registration for AFTER for cremation services (U.S. Reg. No. 7089530) which was filed on October 16, 2021, and registered on June 27, 2023, with a first use date of at least December 15, 2020.

---

[3] Available at: https://www.nytimes.com/2022/02/03/business/cremation-startups-direct-to-consumer.html.

[4] Available at: https://foundationpartners.com/fpgnews/cremation-borrows-a-page-from-the-direct-to-consumer-playbook.

[5] Available at: https://www.fox10phoenix.com/news/pandemic-resulted-in-changes-to-funerals-in-the-u-s-heres-what-you-should-know.

[6] Available at: https://utah.vc/p/aftercom-raises-4m-to-expand-funeral.

4

12.2   Plaintiff further filed another AFTER-formative trademark application for AFTER-PARTY (U.S. Ser. No. 97078058), filed October 16, 2021, for cremation services.

13.   **February 3, 2022**, FPG press release applauds the accelerating cremation business and expressly mentions AFTER and their $1mm raise.[7]

14.   **November 2, 2022**, Foundation Partners acquires SolaceCares (per its blog post) and PR news wire. A true and correct copy of PR News Wire's article, attached hereto as **Exhibit 6**.[8]

15.   **June 13, 2023,** AFTERall applies for various trademarks including for cremation services (*fraudulently affirming it is unaware of other users*, and *incorrectly* claiming a first use date of February 17, 2019 while using a 2023 specimen) and continues offering cremation services under the AFTERall mark.  All of FPG's marks but Application No. 98041290 are currently suspended by the owner of the applications "Human After All" (filed before FPG's applications (but after AFTER's) in April of 2023).

15.1   98041290: (AFTER ALL) claiming a first use of Feb. 27, 2019 (published May 7, 2024): "Providing a website featuring online non-downloadable publications in the nature of articles in the field of funerals and the funeral service industry, cremation and burial, end-of-life decisions and documentation, palliative and hospice care, and grief";

15.2   98041346: (AFTERall) an "intent to use" application with an expansive list of classes, goods and services, that was suspended in view of the U.S. Application Serial No(s). 97877499 (HUMAN AFTER ALL) publications and events;

15.3   98226815: (AFTERall stylized) an "intent to use" application with an expansive list of classes, goods and services, that was suspended in view of the U.S. Application Serial No(s). 97877499 (HUMAN AFTER ALL) publications and events.

---

[7] *See* **Exhibit 2**.

[8] *See* FPG's Press Release "Foundation Group Partners Acquires Solace Cremation and Extends Commitment to Digital" available at: https://www.prnewswire.com/news-releases/foundation-partners-group-acquires-solace-cremation-extends-commitment-to-digital-301665645.html; *see also* https://funeraldirectordaily.com/foundation-partners-group-purchases-solace-extends-direct-to-consumer-digital-cremation-services/.

16. **December 2023,** Plaintiff has also filed for several other "AFTER" applications as follows:

16.1   AFTER (U.S. Ser. No. 98295985), filed December 2, 2023, for capsules of plastic or wood for containing cremation remains or memorabilia; cremation urns; funerary urns; picture frames;

16.2   AFTER (U.S. Ser. No. 98295991), filed December 2, 2023, for memorial jewelry;

16.3   AFTER (U.S. Ser. No. 98306677), filed December 9, 2023, for printed guest books for funerals and celebration of life ceremonies;

16.4   AFTER (U.S. Ser. No. 98306682), filed December 9, 2023, for estate planning; estate trust planning; financial services, namely, estate settlement services; financial services, namely, life insurance settlement services; insurance services, namely, underwriting, issuing and administration of life insurance; pre-paid funeral expense services; and providing information in the field of estate planning;

16.5   AFTER (U.S. Ser. No. 98306688), filed December 9, 2023, for capsules of crystal, china, terra cotta, earthenware, glass, and porcelain for containing cremation remains or memorabilia;

16.6   AFTER (U.S. Ser. No. 98306691), filed December 9, 2023, for candles for memorial, funeral, and celebration of life ceremonies;

16.7   AFTER (U.S. Ser. No. 98306692), filed December 9, 2023, for capsules of metal for containing cremation remains or memorabilia;

16.8   AFTER (U.S. Ser. No. 98306695), filed December 9, 2023, for memorial plaques of stone; and

16.9   AFTER (U.S. Ser. No. 98306705), filed December 9, 2023, for providing personal obituary and memorial service information, with a first use date of December 15, 2020.

17.      **January 17, 2024,** despite knowing of and writing about AFTER, Defendant began marketing its funeral services under the brand, AFTERall, on its website www.AFTERall.com. Defendant's use of the brand AFTERall has resulted in market confusion with Plaintiff's brand AFTER.

17.1  For example, native google search results using the terms "after cremation services" yields results for both AFTER and AFTERall, as documented in the screenshot below:



[screenshot from Google using search terms: "after cremation services" 07/02/24]

17.2  Furthermore, native google search results using the terms, "after cremation orange ca"; "afterall cremation"; "cremation service in colorado"; and "crown memorial portland" each yield results which confuse Plaintiff's brand AFTER with AFTERall. True and correct copies of screenshots of Google search results for the foregoing terms are attached hereto as **Exhibits 7 - 10** respectively.

18.  **June 2024**, Plaintiff AFTER discovered Defendants' use of the infringing mark AFTERall, and contacted Defendant's attorneys.

19.     **July 1, 2024**, Despite an initial phone call with the parties attorneys outlining these facts and demanding that AFTERall immediately cease infringing use of the mark given the likelihood of confusion, and various follow up emails over the course of two weeks, Defendant has yet to comply with Plaintiff's requests.

20.     Defendant's ongoing unlawful conduct and damage has necessitated this suit.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (Violation of Lanham Act 15 U.S.C. §§ 1051 et seq.)

21.     AFTER hereby incorporates each and every allegation set forth in the preceding paragraphs as through set forth fully herein.

22.     Plaintiff owns a valid and registered trademark, AFTER, which is registered with the United States Patent and Trademark Office (U.S. Reg. No. 7089530).

23.     Defendant's use of the confusingly similar AFTERall brand in connection with its funeral services constitutes use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's registered trademark in a manner likely to cause confusion, mistake, or deception among consumers.

24.     For example, AFTER began offering services with softer colors, including a tan, and pastel orange colorings, and AFTER mimics the same coloring tones as captured in the screenshots taken on July 7, 2024, below.



[screenshot from After.com 07/2/24]

8



[screenshot from AFTERall.com 07/2/24]

25.    AFTERall has also imitated AFTER's brand, name, likeness and image, and has intentionally run google ads to confuse consumers into thinking that AFTERall is AFTER.

26.    Consumers and vendors have begun to confuse AFTER and AFTERall, causing irreversible harm and damage to AFTER's brand.

27.    As a direct and proximate result of Defendant's trademark infringement, Plaintiff has suffered and continues to suffer economic harm, including lost revenue, damage to its business reputation, confusion of its brand, injury to its image, and loss of prospective clients who are confusing AFTERall with AFTER.

28.    AFTERall's activities were intentional and tortious, as AFTERall knew of AFTER, wrote of AFTER in publications, and was doing business with AFTER before it began to infringe AFTER's trademarks.

29.    Plaintiff is entitled to recover damages for Defendant's trademark infringement, including but not limited to lost profits, actual damages, and the costs of this action.

**SECOND CLAIM FOR RELIEF**

**(Trademark Infringement Pursuant to 15 U.S.C. § 1114)**

30.    AFTER hereby incorporates each and every allegation set forth in the preceding paragraphs as through set forth fully herein.

31.    Plaintiff owns a valid and registered trademark, AFTER, which is registered with the United States Patent and Trademark Office (U.S. Reg. No. 7089530).

32.    Defendant's use of the confusingly similar AFTERall brand in connection with its funeral services constitutes use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's registered trademark in a manner likely to cause confusion, mistake, or deception among consumers.

9

33.     Defendant's actions violate 15 U.S.C. § 1114, which prohibits the use in commerce of any reproduction, counterfeit, copy, or colorable imitation of a registered trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

34.     As a direct and proximate result of Defendant's trademark infringement, Plaintiff has suffered and continues to suffer economic harm, including lost revenue, damage to its business reputation, and loss of prospective clients.

35.     Plaintiff is entitled to recover damages for Defendant's trademark infringement, including but not limited to lost profits, actual damages, and the costs of this action.

36.     Plaintiff is also entitled to recover enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) due to the willful and intentional nature of Defendant's conduct.

**THIRD CLAIM FOR RELIEF**

**(Trademark Dilution Pursuant to 15 U.S.C. § 1125(c))**

37.     AFTER hereby incorporates each and every allegation set forth in the preceding paragraphs as through set forth fully herein.

38.     Plaintiff's AFTER trademark is distinctive and famous, having been widely recognized by the general consuming public as a designation of Plaintiff's goods and services.

39.     Defendant's use of the confusingly similar AFTERall mark, domain, color and brand in connection with its funeral services is likely to cause dilution by blurring or dilution by tarnishment of the distinctive quality of Plaintiff's AFTER trademark.

40.     Defendant's actions violate 15 U.S.C. § 1125(c), which provides protection against the dilution of famous trademarks.

41.     As a direct and proximate result of Defendant's trademark dilution, Plaintiff has suffered and continues to suffer economic harm, including lost revenue, damage to its business reputation, and loss of prospective clients.

42.     Plaintiff is entitled to recover damages for Defendant's trademark dilution, including but not limited to lost profits, actual damages, and the costs of this action.

///

43.     Plaintiff is also entitled to injunctive relief to prevent further dilution of its famous trademark by Defendant.

**FOURTH CLAIM FOR RELIEF**

**(Common Law Trademark Infringement)**

44.     AFTER hereby incorporates each and every allegation set forth in the preceding paragraphs as through set forth fully herein.

45.     Plaintiff owns and has continuously used the AFTER trademark and brand in commerce in connection with its cremation and funeral services since 2020, including via www.after.com, with distinct pastel colors and style.

46.     Defendant is marketing its funeral services under the brand AFTERall on its website www.AFTERall.com and offering services throughout the U.S including in Nevada, with a confusingly similar name, and pastel color scheme.

47.     Defendant's use of the confusingly similar AFTERall brand in connection with its funeral services is likely to cause confusion, mistake, or deception among consumers, and constitutes trademark infringement under the common law of the State of Nevada.

48.     Defendant is offering services in Nevada.

49.     Defendant's actions have misled and are likely to continue to mislead consumers into believing that Defendant's services are affiliated with, sponsored by, or endorsed by Plaintiff, to Plaintiff's detriment.

50.     Plaintiff's current and potential business in Nevada is impaired due to Defendants unlawful use of a similar name and color scheme.

51.     As a direct and proximate result of Defendant's common law trademark infringement, Plaintiff has suffered and continues to suffer economic harm, including lost revenue, damage to its business reputation, and loss of prospective clients.

52.     Plaintiff is entitled to recover damages for Defendant's common law trademark infringement, including but not limited to lost profits, actual damages, and the costs of this action.

53.     Plaintiff is also entitled to injunctive relief to prevent further infringement and unfair competition by Defendant.

## FIFTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage)

54.     AFTER hereby incorporates each and every allegation set forth in the preceding paragraphs as through set forth fully herein.

55.     Plaintiff owns the federal trademark registration for AFTER for cremation services (U.S. Reg. No. 7089530), which was filed on October 16, 2021, and registered on June 27, 2023, with a first use date of December 15, 2020.

56.     Since Plaintiff commenced its operations in 2020, it has continuously used the AFTER trademark and brand in connection with its business services, including advertising and promoting its cremation and funeral services.

57.     Plaintiff has invested significant time, effort, and resources into developing and promoting the AFTER brand, resulting in widespread recognition and substantial goodwill associated with the mark.

58.     Defendant is marketing its funeral services under the brand AFTERall on its website www.AFTERall.com and offering services throughout the U.S including in Nevada.

59.     The AFTERall brand used by Defendant is confusingly similar to Plaintiff's AFTER trademark and brand in name and color scheme, causing confusion among consumers and potential clients, and vendors.

60.     Defendant is actively promoting AFTERall with GoogleAds to block web searches of AFTER, and instead prioritize AFTERall above AFTER in the search results, to interfere with prospective clients, and confuse them into using AFTERall thinking it was or in place of AFTER. *See* **Exhibits 7 – 10**.

61.     Defendant's use of the AFTERall brand has interfered with Plaintiff's prospective economic advantage by diverting potential customers away from Plaintiff's business to Defendant's services.

62.     Plaintiff has a reasonable expectation of prospective economic advantage through the continued use and promotion of its AFTER trademark and brand.

///

12

63.     Defendant had knowledge of Plaintiff's prospective economic advantage, including the use and promotion of the AFTER trademark and brand.

64.     Defendant intentionally and wrongfully interfered with Plaintiff's prospective economic advantage by using the confusingly similar AFTERall brand to market its funeral services.

65.     Defendant's conduct was independently wrongful, unfair, and unlawful, including but not limited to violations of trademark laws and unfair competition laws.

66.     As a direct and proximate result of Defendant's intentional interference, Plaintiff has suffered and continues to suffer economic harm, including lost revenue, damage to its business reputation, and loss of prospective clients.

67.     Plaintiff is entitled to recover compensatory damages, including but not limited to lost profits and damage to business reputation, in an amount to be proven at trial.

68.     Plaintiff is also entitled to recover punitive damages due to the willful, malicious, and oppressive nature of Defendant's conduct as well as such other and further relief as the Court may deem just and proper.

## SIXTH CLAIM FOR RELIEF

### (Unfair Competition Pursuant to 15 U.S.C. § 1125(a)

69.     AFTER hereby incorporates by this reference each and every allegation set forth in the preceding paragraphs as through set forth fully herein.

70.     Plaintiff's AFTER trademark is distinctive and has acquired secondary meaning.

71.     Defendant's use of the confusingly similar AFTERall brand in connection with its funeral services constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's services by Plaintiff.

72.     Defendant's actions violate 15 U.S.C. § 1125(a), which prohibits false designations of origin, false descriptions, and false representations in commerce.

///

73.     As a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered and continues to suffer economic harm, including lost revenue, damage to its business reputation, and loss of prospective clients.

74.     Plaintiff is entitled to recover damages for Defendant's unfair competition, including but not limited to lost profits, actual damages, and the costs of this action.

75.     Plaintiff is also entitled to recover enhanced damages and attorneys' fees under 15 U.S.C.1117(a) due to the willful and intentional nature of Defendant's conduct.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**(Deceptive Trade Pursuant to NRS Chapter 598)**

76.     AFTER hereby incorporates each and every allegation set forth in the preceding paragraphs as through set forth fully herein.

77.     NRS 41.600(1) allows an action to "be brought by any person who is a victim of consumer fraud."

78.     NRS 41.600(2)(e) defines consumer fraud as a "deceptive trade practice as defined in NRS 598.0915 to NRS 598.0925, inclusive."

79.     NRS 598.0915, NRS 598.0917, and NRS 598.0923 require that the person do the act in their business.

80.     Here, Defendants were acting in their business when they made false representations to Plaintiff and the public.

81.     NRS 598.0915(5) defines deceptive trade practice as a person in their business that knowingly "makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith." Here, Defendants' false representations were made repeatedly and systematically to the public and to customers.

82.     But, in fact, Defendant knew that no business relationship existed with Plaintiff, and knew that Plaintiff had registered and was actively using the AFTER mark.

///

///

14

83.     Defendant FPG, with knowledge of Plaintiff's trademark, intentionally made false statements to the USPTO, consumers, and the public regarding the mark "AFTERall" in an attempt to imply and deceive consumers that Plaintiff and Defendant were in a business relationship.

84.     Defendant FPG's actions constitute deceptive trade practices pursuant to NRS 598.0915 to 598.0925, including but not limited to:

> a. Knowingly making a false representation as to the source, sponsorship, approval, or certification of goods or services (NRS 598.0915(2));

> b. Using deceptive representations or designations of geographic origin in connection with goods or services (NRS 598.0915(3));

> c. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have (NRS 598.0915(5));

> d. Using deceptive representations or designations in connection with goods or services to mislead the public (NRS 598.0915(9)).

85.     Defendant FPG's representations were false and were made intentionally to deceptively represent that Plaintiff and Defendant were in a business relationship so that Defendant could usurp Plaintiff's reputation, goodwill, and marketing for its own uses.

86.     As a direct and proximate result of Defendant FPG's deceptive trade practices, Plaintiff has suffered and continues to suffer damages, including but not limited to, loss of sales, loss of business reputation, and dilution of its trademark.

87.     As a result of the foregoing, Plaintiff has been damaged in a sum which exceeds the jurisdictional minimum of $75,000.00, in an amount that will be determined at a jury trial of this matter.

88.     As a further result of Defendants' conduct, Plaintiff has been required to hire an attorney to prosecute this action and, therefore, seeks recovery of its attorneys' fees and costs.

///

///

15

**EIGHTH CLAIM FOR RELIEF**

**(Cybersquatting Pursuant to 15 U.S.C. § 1125(d))**

89.     AFTER hereby incorporates by this reference each and every allegation set forth in the preceding paragraphs as through set forth fully herein.

90.     Plaintiff's AFTER trademark was distinctive at the time Defendant registered the domain name www.AFTERall.com.

91.     Defendant's domain name www.AFTERall.com is confusingly similar to Plaintiff's AFTER trademark, consisting of the same formative mark.

92.     Defendant registered, trafficked in, or used the domain name www.AFTERall.com with a bad faith intent to profit from Plaintiff's AFTER trademark, in violation of 15 U.S.C. § 1125(d).

93.     In determining whether Defendant has a bad faith intent, the following factors are relevant:

      93.1  Defendant's intent to divert consumers from Plaintiff's online location to a site accessible under the domain name www.AFTERall.com that could harm the goodwill represented by Plaintiff's mark, either for commercial gain or with the intent to tarnish or disparage Plaintiff's mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

      93.2  Defendant's registration or acquisition of multiple domain names that are identical or confusingly similar to Plaintiff's mark; and

      93.3  The extent to which Defendant has used, or made preparations to use, the domain name www.AFTERall.com in connection with a bona fide offering of goods or services.

94.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer economic harm, including lost revenue, damage to its business reputation, and loss of prospective clients.

95.     Plaintiff is entitled to the transfer of the domain name www.AFTERall.com to Plaintiff.

96.     Plaintiff is also entitled to recover statutory damages in an amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just, pursuant to 15 U.S.C. § 1117(d).

97.     Plaintiff is also entitled to recover costs and attorneys' fees incurred in this action.

## PENDING NINTH CLAIM FOR RELIEF

### (Mark Cancellation Pursuant to 15 U.S.C. § 1064 - Fraud)

98.     AFTER hereby incorporates each and every allegation set forth in the preceding paragraphs as through set forth fully herein.

99.     FPG asserts that its applications for registration of the AFTERALL Marks are valid and enforceable, and that once registered, FPG has authority to enforce its registrations throughout the United States.

100.    FPG filed its applications for the AFTERall Marks (98041290, 98041346, 98226815) including in classes 006, 014, 019, 020, 021, 035, 038, 041, 042, 044, and 045, all related to cremation services as identified in its applications.

101.    If registered, these applications should be canceled for fraud because the filings assert an original use date that is inconsistent with the clear time and fact.

102.    AFTER is informed and believes, and thereupon alleges that FPG has not actually used the marks as claimed on February 17, 2019, but rather did not begin using the mark until February 3, 2022 and knowingly misrepresented use to the USPTO with the intent to procure the registrations for the AFTERall Marks.

103.    AFTER reserves the right to amend this complaint and bring a claim for fraud and cancellation if the applications are granted, and if registered, requests that this Court declare the applications for registration of the AFTERall Marks void and/or canceled.

## TENTH CLAIM FOR RELIEF

### (Declaratory Relief -- 28 U.S.C. § 2201, *et seq.*)

104.    AFTER hereby incorporates each and every allegation set forth in the preceding paragraphs as through set forth fully herein.

///

17

105.   FPG's efforts to assert and claim exclusive nationwide rights to use of the mark "AFTERall" are inconsistent with and constitute an improper claim to the scope of mark rights established through registration of the AFTERall Marks.

106.   An actual case or controversy exists between AFTER and FPG with regard to the scope of use rights, if any, for the AFTERall Marks, such that AFTER is entitled to declaratory relief declaring the rights and other legal relations between AFTER and FPG vis-a-vis the AFTERall Marks and the Disputed Mark, pursuant to 28 U.S.C. § 2201, *et seq.*

107.   AFTER seeks a declaratory judgment from this Court that: (a) FPG and does not own valid, enforceable trademark rights in the term "AFTERall" and the AFTERall Marks; (b) that AFTER has enforceable trademark rights in the AFTER Marks; and (c) AFTER's use of the AFTER Marks does not infringe any rights, if any, FPG has in the AFTERall Marks.

## **PRAYER FOR RELIEF**

WHEREFORE, AFTER prays for entry of judgment and relief against FPG as follows:

1. For a permanent injunction enjoining Defendant FPG from using the mark "AFTERall" or any other mark that is confusingly similar to Plaintiff's "AFTER" trademark;

2. An order transferring the domain name www.AFTERall.com to Plaintiff;

3. That AFTER recover its actual and special damages in an amount to be proven at trial;

4. For an award of punitive and exemplary damages against FPG for FPG's oppressive, fraudulent, and malicious acts as alleged herein;

5. That AFTER recover its attorney's fees and costs incurred in prosecuting this action pursuant to applicable statutes and law;

///

///

///

6. For entry of a declaratory judgment establishing the scope of the use rights, if any, for the AFTERall Marks, and for entry of a declaratory judgment establishing that FPG does not possess any exclusive nationwide use rights in and to the Disputed Mark; and

7. That AFTER be awarded such and other further relief as this Court deems just and equitable, including punitive and exemplary damages given their intentional and knowing violation of state and federal law.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.


DATED this 3rd day of July, 2024.


LEX TECNICA LTD


/s/ Samuel Castor

Samuel Castor, Esq.
Nevada Bar No. 11532
Scott Whitworth, Esq.
Nevada Bar No. 15671
10161 Park Run Drive
Suite 150
Las Vegas, Nevada 89145
(725) 239-8413
sam@lextecnica.com
scott@lextecnica.com
*Attorneys for Plaintiff*

# **EXHIBIT 1**

# **EXHIBIT 1**



Discover      Our Difference      Partner with Us      Careers      Our Brands      Ideas Blog      Contact

*Foundation Partners enters high cremation state of Nevada with latest acquisition*

**ORLANDO, Fla.** – August 6, 2021 – Foundation Partners Group, a leading provider of innovative funeral and cemetery experiences and products, today announced the acquisition of Kraft Sussman Funeral & Cremation Services in Las Vegas, Nevada. The acquisition is the first for Foundation Partners in the State of Nevada, where the cremation rate is among the highest in the country.

"Kraft Sussman is ahead of the curve in a number of areas," said Tom Kominsky, Foundation Partners Group chief financial officer. "They recognized early on that consumer preferences have been shifting toward cremation and, like Foundation Partners, they have embraced this change."

Former owners, Wendy Kraft and Laura Sussman, teamed up in 2009 to open Kraft Sussman Funeral & Cremation Services with the belief that existing firms were not meeting the needs of their community. "We saw how other funeral homes operated and knew we could do better, so we built a better model," Kraft said.

When it came time to plan for the future of their business, Kraft and Sussman looked for a partner that understands the cremation market as well as they do. "Southern Nevada is one of the largest cremation markets in the country, and Foundation Partners really understands cremation," said Sussman. "They came to the partnership knowing what makes us successful and they are excited to continue our work; that made us comfortable from the very beginning."

Going forward, Kraft and Sussman will continue to manage the business, and are excited to free up some of their time by handing off back-office administrative duties to the Foundation Partners team. "We look forward to taking a step back in some areas and carving out more time to spend with families and our community," Kraft said.

**About Foundation Partners Group**: Orlando, Florida-based Foundation Partners Group is one of the industry's most innovative providers of funeral services. The company owns and operates a network of more than 170 funeral homes, cremation centers and cemeteries across 20 states. Our organizational structure allows us to embrace and grow the legacies of the local funeral homes we acquire while leveraging the economies of scale, deep understanding of technology, and our ShareLife® customer experience-centered approach to deliver truly innovative and compassionate care to the families we serve. Visit www.foundationpartners.com to learn more.

©2024 Foundation Partners Group, LLC. All rights reserved.

Terms of Use and Privacy Policy
Do Not Sell My Info - CA Residents Only

# **<u>EXHIBIT 2</u>**

# **<u>EXHIBIT 2</u>**



Discover      Our Difference      Partner with Us      Careers      Our Brands      Ideas Blog      Contact

Read full article on The New York Times

With names like Solace, Tulip and Eirene, start-ups are hoping to make cremation the next big at-home purchase.

"If you look at every other industry, online models are just becoming the norm," said Mallory Greene, the founder of Eirene, a direct-to-consumer cremation start-up.

Credit...Nathan Cyprys for The New York Times

**By Michael Waters**

Feb. 3, 2022

Less than two hours after you book a cremation with Eirene, a start-up in Ontario, the company dispatches a mortuary transit driver to pick up your loved one. The body is ferried to a cold storage facility, where it stays until Eirene has processed the end-of-life paperwork. From there, one of Eirene's crematory partners will cremate the body, and a funeral director who works for Eirene will either drive the ashes to your door or send them via mail. All told, the process takes about one week.

It's the promise of direct-to-consumer brands like Casper, retrofitted for the death industry. Taking this approach to an industry as emotionally charged — and legally complex — as the death care business might sound far-fetched. But as the cremation rate balloons in North America, with that option expected to be taken in about 63 percent of deaths in the United States by 2025, investors are betting that the future of the business lies in e-commerce.

At the same time, millennials and Gen Xers are increasingly making end-of-life decisions for their parents, and some are expecting a process that approximates the ease of an online order. To reach them, new companies with

names like Solace, Tulip, Smart Cremation, After Cremation, Eirene and Lumen are borrowing both the business models and the bright, sans-serif aesthetics of start-ups like Glossier and Allbirds — all in the hopes of making cremation the next big at-home purchase.

That future, however, will require a stark reshaping of the funeral industry. Right now, a vanishingly small portion of funerals and cremations are arranged online. Most Americans turn to one of the country's 18,800 traditional funeral homes, and few of those even have an active website. A report from 2018 found that only 16 percent listed their full prices online (though the number has probably shifted during the pandemic). Online cremation start-ups may be a novelty in 2022, but as digitally native shoppers grow older in the coming decades, they might not stay that way.

"It's one of the industries that really hasn't changed in the past 100 years," said Mallory Greene, the founder of Eirene. "You're still going to walk in and make the arrangements, fill out a bunch of paperwork." For people who are grieving, she said, "it's obviously very burdensome and overwhelming."

Right now, "Gen X is who we're marketing to," she said, largely because Gen Xers arrange the bulk of funerals today. But she said millennials would make up an important demographic in the future: "As millennials start making arrangements, I think they will be heavier on the digital side."

Ms. Greene's father worked as a mortician in an independent funeral home in Toronto. Though she pursued a career in financial tech, she always knew she wanted to start her own company, and she couldn't get the thought of revamping the funeral industry out of her head. Ms. Greene started Eirene in 2019 with the goal of eliminating the stress and logistics from arranging a cremation.

Ms. Greene, a mortician's daughter, wants to use her background in financial tech to revamp the funeral industry.Credit...Nathan Cyprys for The New York Times

Around the same time, two former Nike executives founded Solace, backed by a modest $1.7 million in venture capital. Solace now operates in Seattle; Portland, Ore.; and several cities in Southern California. Also in 2019, a major operator of funeral homes, Foundation Partners Group, bought the start-up Tulip Cremation, which today is active in eight states. It has deep pockets behind it: Foundation Partners Group's parent company is the private equity firm Access Holdings, which said last year that it was investing $150 million in improving the tech side of the funeral business. In October, After Cremation in Utah disclosed a $1 million funding round.

The pitch, to consumers and investors, boils down to convenience and price. The companies point to the growing number of Americans who live away from home as a target demographic.

"It wouldn't be that uncommon to see an older parent pass in Florida, for

example, while their children live somewhere up in the Northeast," said Mike Doyle, Tulip's general manager. That doesn't mean people will automatically turn to an online start-up. Many families have visited the same funeral homes for generations, and it will take more than a little bit of inconvenience to get customers to sign up.

More persuasive to the average person might be the price. While a typical cremation costs a few thousand dollars, these start-ups advertise prices from roughly $800 to $1,000.

They contract with wholesale crematories, and the start-ups say they can pass on the savings. Plus, "with the right technology enabling a more efficient process, we can handle more cremations than a typical funeral home," said Keith Crawford, a co-founder and the chief executive of Solace.

Getting started has been slow. In December, Tulip completed its 20,000th cremation since its introduction in 2018. Solace would disclose only that its annual customer total is in the "four figures." Lumen, a small Nashville company, said it was approaching 300 cases since its introduction in April.

"From actual dollars and cents and how many people they're serving, it's still fairly small," said Suelin Chen, the chief executive and a co-founder of Cake, a website that helps people plan their end-of-life care. But "I think they have an outsized influence, she added.

They are also coming up against a more fundamental problem: Cremation doesn't lend itself well to e-commerce. Most of these start-ups are tech companies first. They build the website and back-end platform that lets people place an order, but they rely on vendors for everything else.

Operating as a tech overlay may work well for, say, a travel or hospitality start-up, but in the funeral business, it brings its own headaches. In almost every state, consumers can buy cremations only from a licensed funeral home. That means every one of these start-ups needs a brick-and-mortar shop in each state where it offers services. Eirene has a small office for regulatory reasons, but Ms. Greene said no customer had ever asked to visit it. Mr. Crawford said Solace had small offices in Seattle, Portland and Los Angeles that the funeral directors on his staff "work from occasionally," but most of his team is remote.

Other states have requirements so rigorous that it's hard to imagine this business would even be possible in them. Alabama, for instance, requires funeral homes to have a conference room, a display area with at least "eight different adult size caskets" and a viewing area that can hold at least 100 people.

"Nearly all states have licensure requirements that were established without contemplating this type of business model," said Mr. Doyle of Tulip. "As we continue to grow, there are certainly regulatory frictions that are slowing down the process a little bit."

Victoria J. Haneman, a law professor at Creighton University who studies the

funeral business, said that "many of the state-by-state regulations are outdated and completely unnecessary." While consumers benefit from federal regulation around price disclosure, some of these state-level rules protect the companies already operating and create a disincentive for new operators, she said.

Tulip, for example, might be in the best position to make those economics work. Its parent company, Foundation Partners Group, already owns over 170 funeral homes, crematories and cemeteries across 22 states, and Tulip is using that infrastructure to serve its online customers. Unlike its competitors, it doesn't have to sink money into empty storefronts.

Smart Cremation, which has been active for over a decade, has the same perk: Its owner is NorthStar Memorial Group, a company with over 75 funeral home and cemetery locations.

Some old-school funeral homes have offered a version of this service for decades. Barbara Kemmis, the executive director of the Cremation Association of North America, recalled that when her brother died at a college in Wisconsin in the 1990s, the funeral director shipped his cremated remains to her parents in Texas.

But something new is happening. "There's no way of gathering statistics of how many urns are mailed, but anecdotally, from our members, we've heard a dramatic increase," Ms. Kemmis said.

In the United States, cremated remains are legally required to be shipped via the Postal Service, and in 2019, it introduced a postage system called Label 139 for handling them. The label was designed to increase the visibility of these shipments and the caution with which they are handled. It's not cheap — shipping with Label 139 can cost $100 or more — but it is effective.

Tulip said around 75 percent of its customers chose to have the cremated remains mailed to them. At Solace, the portion is closer to one-third, with the rest delivered by a licensed driver.

The pandemic accelerated the rise of e-commerce by years, according to some estimates, so the arrival of these companies fits a pattern. "If you look at every other industry, online models are just becoming the norm," said Ms. Greene, the founder of Eirene.

But in the funeral industry, even those small shifts feel momentous. "I think we're still far away from having an app where someone can make a funeral arrangement," she said. "I don't think we're there yet. But I do think that consumer needs are definitely changing."

©2024 Foundation Partners Group, LLC. All rights reserved.

Terms of Use and Privacy Policy
Do Not Sell My Info - CA Residents Only

# **EXHIBIT 3**

# **EXHIBIT 3**

# What does the report find?

According to the report, which was released in August, more than half of all funeral homes that are members of NFDA began to offer livestreaming services as a way to help families safely gather, while following restrictions on public gatherings during the pandemic.

"The funeral procession has really been impacted by COVID, and the way we did things before is not the way we're doing things now," said Karoline Davidson with after.com, a regional startup that offers online services.

The report also found that 40% of their members now offer online cremation arrangements, while another 28.2% plan to offer the ability to make cremation arrangements online within the next five years..

# How big is this change?

Davidson with after.com said that the funeral profession is "traditionally very slow to change and embrace technology."

"During the pandemic, we saw so many people that were unable or unwilling because of COVID to come in to make arrangements in person, so offering that online service for families makes things easier," said Davidsosn

# **<u>EXHIBIT 4</u>**

# **<u>EXHIBIT 4</u>**

# Utah VC

# After.com Raises $4M to Expand Funeral Insurance and Tech-enabled Cremation Business

Oversubscribed Seed round was closed just 7 months after raising a $1M Pre-seed round.



LUKE GUNDERSON

FEB 02, 2023

Share

PROVO, December 15th, 2022—**After.com**, the fastest growing cremation company in the U.S. and leading provider of end-of-life services, today announced the close of its series seed funding round of $4M. This new investment will further accelerate After.com's expansion into new markets nationwide. The latest round was led by Boulder-based Matchstick Ventures with participation from Revolution.com's ROTR Seed Fund, Sweater Ventures, TEN13, Breaktrail Ventures and angel investors Aaron Skonnard and Chris North, among others.

After.com's internet-first experience helps families navigate end-of-life services without ever needing to step foot inside a funeral home. Instead, families are able to pre-plan or arrange cremation and funeral services online in minutes, offering them simplicity when they need it most.

"After.com has built a fresh new approach to one of humanity's oldest and most universal problems—death," said Natty Zola, Partner at Matchstick Ventures. "Few industries are more in need of change than funerals, and no team is more uniquely qualified than After to lead that change. Their founding team includes not only seasoned tech entrepreneurs, but also a fourth-generation funeral director. We love their empathetic and modern approach to providing valuable products and services for families at such an important time."

This investment opportunity comes as the result of three industry trends: projected increases in annual deaths, shifting consumer preferences in favor of online buying experiences, and a new generation that prefers cremations to traditional burial options. According to the National Funeral Directors Association's 2022 Cremation and Burial Report, the cremation rate is expected to grow to 78.7% of all U.S. deaths by 2040.

"We envision a world where we face mortality with confidence and peace of mind. A world where everyone plans the funeral they want and loved ones get the care they deserve," said Wesley Eames, After.com co-founder

and CEO. "We're shifting the power from funeral homes to families, saving them time, money and energy for what matters most—celebrating the life of their loved one."

In the last 18 months, After.com has expanded from a pilot in Phoenix, Arizona to a fully staffed operation in three states and four markets, with many more scheduled to launch in the coming year. Between cremation services and funeral insurance offerings, the company has helped thousands of families plan for and navigate end-of-life, closing 2022 with over 400% year-over-year growth from 2021.

This seed round follows After.com's nearly $1M pre-seed round only seven months prior, bringing the company's total capital raised to $5M to date. The funding from the current round will be used to expand to new states and markets nationwide, as well as further invest in building new products and services that help families navigate all things end-of-life.

**About After.com**

**After.com** is the new home for funerals. We help people pre-plan the funeral they want online in minutes, and we help grieving families get the care they deserve with affordable direct cremation and funeral services. Our internet-first experience makes it easy for families to navigate all things end-of-life so they can stay focused on what matters—celebrating the life of their loved one.

**About Matchstick Ventures**

At Matchstick Ventures (**matchstick.vc**), we're all about finding and backing the most innovative, ambitious, and diverse founders in the North and Rockies. We're on a mission to support the ideas and companies that have the potential to make a huge impact. And we don't just invest, we work closely with our founders to help them succeed. We're a catalyst for growth and we're proud to be a part of the thriving startup community in this region.

# Subscribe to Utah VC

By Luke Gunderson · Launched 2 years ago

Venture Capital in Utah

Subscribe

Share

Top    Latest

# **EXHIBIT 5**

# **EXHIBIT 5**

solacecares.com

## is now

1-844-385-9589   Instant Quote   Plan Ahead   Blog   Obituaries

# after all
### Stories for the living on dying.



## What Happens When We Die

BY REBECCA ROBERTS GALLOWAY | APR 14, 2023

What happens when we die? It is a



## How to Mark a Death Anniversary

BY REBECCA ROBERTS GALLOWAY | APR 5, 2023



## Trees Not Tombstones: Remembering Loved Ones Outside

BY REBECCA ROBERTS GALLOWAY | MAR

# **EXHIBIT 6**

# **EXHIBIT 6**

 PR Newswire®    Send a Release

# Foundation Partners Group Acquires Solace Cremation, Extends Commitment to Digital

NEWS PROVIDED BY
**Foundation Partners Group** 
Nov 02, 2022, 07:00 ET

SHARE THIS ARTICLE

*Tulip and Solace brands meet growing demand for a digital experience by offering simple, transparent deathcare solutions*

ORLANDO, Fla., Nov. 2, 2022 /PRNewswire/ -- **Foundation Partners Group,** a leading provider of innovative deathcare solutions, today announced that it has acquired **Solace Cremation**, a Portland, Oregon-based online cremation company serving families in Oregon, California and Florida. Adding the Solace brand to its existing digital funeral service, **Tulip Cremation**, acquired in July 2019, extends Foundation Partners' lead in the direct-to-consumer deathcare market. The company now can offer digital arrangements to nearly 50 million families across the U.S.

"Consumer attitudes toward death have changed, and so have their expectations around transparency and service options," said Kent Robertson, Foundation Partners Group president and CEO. "Families are purchasing items online that they would have never thought of buying through digital channels five or ten years ago – everything from eyeglasses to cars and now even funeral services. During the COVID-19 pandemic, funeral service providers were restricted from traditional in-person meetings and had to find new ways to make arrangements. This accelerated the move to digital service offerings and reshaped the funeral profession.  Just like the trend toward cremation will continue over the next 10 years, we believe the growth of new, contemporary digital services will accelerate as well."

Founded by former Nike executives Keith Crawford and David Odusanya, Solace has experienced double-digit growth since its launch in 2019. "Looking across the landscape of industry players, there was only one organization that got what we got – that the funeral experience needed reimagining," Crawford said. "Foundation Partners is a team of innovative thinkers, industry experts and inclusive collaborators who are playing the long game and investing in the future of deathcare."

Robertson said 2022 has been a record year for his company's deal velocity as more and more funeral business owners choose Foundation Partners as their partner of choice. "The funeral industry business model is changing, led by the increased demand for cremation, but we've been investing in that transition for the last 12 years," he said. "Now that consumer preferences are shifting to digital experiences, we're expanding our platform to serve the needs of every family, from those that want meet in person to those who wish to interact online. By leveraging our existing cremation expertise and infrastructure, we can manage the entire continuum of care for loved ones entrusted to us. This will enable us to rapidly expand the online cremation category and evolve Tulip and Solace into national brands families can trust."

*About Foundation Partners Group: Orlando, Florida-based Foundation Partners Group is one of the industry's most innovative providers of funeral solutions and the second largest funeral home group in the country based on number of families served. Foundation Partners owns and operates a network of over 230 funeral homes, cremation centers and cemeteries across 21 states. Our deep understanding of technology and our ShareLife® customer experience-centered approach allows us to deliver truly innovative and compassionate care to the families we serve. Visit* **www.foundationpartners.com** *to learn more.*

**CONTACT:**

Lynette Viviani
For Foundation Partners Group
973-534-1004
**Lynette.viviani.ic@foundationpartners.com**

SOURCE Foundation Partners Group

# Also from this source

# Explore

## Foundation Partners Group Appoints New Chief Financial Officer

Foundation Partners Group, a leading provider of innovative deathcare services, today announced the appointment of Linden Arakawa as Chief Financial...

**More Releases From This Source**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -


Health Care & Hospitals


Licensing

**News Releases in Similar Topics**

- - - - - - - - - - - - - - - - - - - - - - - - - -

---

## Contact PR Newswire

☐ Call 888-776-0942 from 8 AM - 9 PM ET

Chat with an Expert

Contact Us⏍⏍

## Products

For Marketers
For Public Relations
For IR & Compliance
For Agency
For Small Business
All Products

## About

About PR Newswire
About Cision
Become a Publishing Partner
Become a Channel Partner
Careers
Accessibility Statement

Global Sites⏍⏍

## My Services

All New Releases
Online Member Center
ProfNet

Terms of Use  |  Privacy Policy  |  Information Security Policy  |  Site Map  |  RSS  |
Cookie Settings

Copyright ©
2024 Cision US Inc.

# **EXHIBIT 7**

# **EXHIBIT 7**




How much does it cost to be cremated in Orange county CA?

Who pays for cremation if no money in California?

What are the rules for cremation in California?

How soon after death should a body be cremated?

Feedback


After.com
https://www.after.com › Service Areas

### California Cremation Services for $995

**California's** most affordable **cremation** services starting at $995 saving an average of $7690 in **California** on traditional **funeral** services.

Missing: ~~orange~~ | Show results with: orange


Cremation Society of Orange Coast
https://www.cremationoc.com

### Cremation Society of Orange Coast: Cremation Services in ...

**Cremation** Society of **Orange** Coast is an affordable and dignified alternative to a traditional **funeral** service. Call us 24/7 for arrangements.


afterall.com
https://www.afterall.com › omega-society › caoms

### Funeral and Cremation Services at The Omega Society - Afterall

1577 North Main Street, **Orange, CA** 92867 · **(714)** 202-2898 · Monday through Friday from 8am to 4:30pm. 24/7 answering service.


simplicity247.com
https://simplicity247.com

### Simplicity Cremation - Simple Cremation, Affordable ...

Simple, Private, Affordable **Cremation** Service Just $980. Simplicity **Cremation** offers Simple

# **EXHIBIT 8**

# **EXHIBIT 8**

 
Results for **East Bay, Provo** · Choose area ⋮

 afterall.com
https://www.afterall.com ⋮

### Afterall | Your partner through the end-of-life experience

We are **Afterall**. More than 100+ **death** care companies, in collaboration with ... **funeral**, **cremation**, and **cemetery** providers associated with Foundation Partners ...

**Locations**
Dewitt Memorial Funeral Homes & Cremation Services. 4612 ...

**Obituaries**
Obituaries · Julio Azanza. 1924-2024 · Laurencio Mendez. 1950 ...

**Oregon Cremation Company**
Serving Portland with Affordable Direct Cremation ... As one of ...

**Cremation Jewelry**
Remember your loved one with a necklace. We carry a wide ...

**Crown Cremation Services**
Crown Cremation Services is a respectful and affordable ...

More results from afterall.com »

 After.com
https://www.after.com ⋮

### After.com - Cremation Services and Funeral Insurance

Arrange **cremation** services online from the comfort of your home, saving you time, money and energy for what matters most—celebrating their life.



See photos  See outside

## After.com - Cremation and Funeral Planning

| Website | Directions | Save | Call |

4.7 ★★★★★ 14 Google reviews

Funeral home in Provo, Utah

**Located in:** The Startup Building Co-Working
**Address:** 560 S 100 W St #21, Provo, UT 84601
**Hours:** Open 24 hours · More hours
**Phone:** (844) 905-2639

Suggest an edit

**Appointments:** after.com  Providers ⓘ

### Products  View all

# **<u>EXHIBIT 9</u>**

# **<u>EXHIBIT 9</u>**


 Legacy Cremation Services
https://www.legacycremationservices.com › colorado   ⋮

**Colorado Cremation Services | Cremation Costs**

**Colorado Cremation Services** have low cremation costs starting at $695 but offer the highest level of **cremation services** to all denominations.

afterall.com
https://www.afterall.com › funeral-cremation › brands   ⋮

**All-States Cremation in Colorado - Afterall**



Since 1985, All-States **Cremation** Services has been a trusted choice for generations of families seeking simple and dignified cremation arrangements.

Sponsored

 After.com
https://www.after.com › pre-plan › funeral   ⋮

**Pre-Planned Cremation | Direct Cremation Only Cost**

Preplan your final arrangements online in minutes. No medical exams. No funeral home visit.
Low Cost **Cremation Services**. Least Expensive **Cremation** Prices. Prepaid **Cremation** Plans.
See Upfront Pricing. See **Cremation** Costs Now.

★★★★★ Rating for after.com: 4.9 - 421 reviews

View Cremation Pricing · View Pricing for PrePlans · View Washington Pricing · Pre-Plan

 📞 Call us

**People also search for** ⋮

| | |
|---|---|
| **Free** cremation Colorado   🔍 | Crema... |
| **How much does** cremation **cost in** Colorado   🔍 | How n... withou... |
| **Cost of** cremation **in Colorado Springs**   🔍 | Cremation **services Aurora, CO**   🔍 |



 **Sign in to Google**
Access your Google services with one sign-in

Stay signed out    Sign in

# **<u>EXHIBIT 10</u>**

# **<u>EXHIBIT 10</u>**



Sponsored

 afterall.com
https://www.afterall.com

### Crown Cremation | Funeral Services Portland, OR

Serving local and surrounding counties. Phone support available 24/7. Call Today. We Provide Cremations At Our Fully Equipped & Clean Modern Facility. Call Today. Quality, sincerity, trust. Serving with Respect.

Shop for Cremation Urns · Preplanning Made Simple · Create an Online Obituary

📞 Call us

Sponsored

 tulipcremation.com
https://www.tulipcremation.com

### Use Tulip's Online Quote Tool - Tulip Cremation

With Tulip's prepaid plan you can lock in today's price for services in the future. Protect your loved ones from unforeseen financial costs by preplanning with Tulip. Online Arrangements.

📍 1927 Northwest Kearney Street, Portland, Oregon - +1 503-549-4900 - Open today · Open 24 …

Sponsored

 After.com
https://www.after.com › pre-plan › funeral

### Pre-Planned Cremation | Direct Cremation Only Cost

Preplan your final arrangements online in minutes. No medical exams. No funeral home visit

Read About Our Mission · Pre-Plan · View Pricing for PrePlans · PrePlanning Webinar

 Ever Loved
https://everloved.com › ... › States › Oregon › Portland

### Crown Memorial Centers - Funeral Homes

About **Crown Memorial** Centers. Address. 17064 SE McLoughlin Blvd. ... **Crown Memorial** Centers, found in bustling **Portland**, Oregon, offers comprehensive funeral ...



 sharelife.com
https://sharelife.com › location › crown-memorial-center…

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
<tr><td><i>Plaintiff(s)</i></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Civil Action No.</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
<tr><td><i>Defendant(s)</i></td><td>)</td><td></td></tr>
</table>

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                            *Signature of Clerk or Deputy Clerk*

JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| AFTER SERVICES, INC., a Delaware corporation | FOUNDATION PARTNERS GROUP, LLC, a Florida limited liability company, and DOES I-X, inclusive. |

**(b)** County of Residence of First Listed Plaintiff   Utah County, UT
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Orange County, FL
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
SAMUEL CASTOR, ESQ. LEX TECNICA, LTD.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

Attorneys *(If Known)*
ELEANOR YOST, ESQ.
4221 W. Boy Scout Blvd., Ste. 1000 | Tampa, Florida 33607
(813) 229-4395

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☒ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§ 1051 et seq.
Brief description of cause:
Violation of Lanham Act and trademark infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*   JUDGE _____   DOCKET NUMBER _____

DATE
07/03/2024

SIGNATURE OF ATTORNEY OF RECORD
Samuel Castor

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)　Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)　County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)　Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.　Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.　Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.　Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.　Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.　Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.　Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.　Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.